IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LEISURE HOSPITALITY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-CV-272-GKF-PJC |
| ) | |
| HUNT PROPERTIES, INC.; SFM GP, LLC; ) | |
| and SF CROSSING INVESTORS, LTD now ) | |
| SF CROSSING INVESTORS, L.P. ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

This matter comes before the court on defendants' Motion to Dismiss Plaintiff's First Amended Complaint. [Doc. No.77]. For the reasons set forth below, the motion is denied.

**I. Background/Procedural History**

This suit arises from the sale by defendant SF Crossing Investors, Ltd. ("Crossing") of land in the Smith Farm Marketplace in Owasso to plaintiff Leisure Hospitality, Inc. ("LHI"). Plaintiff sued defendants in Tulsa County District Court, alleging they negligently failed to convey the property free of encumbrances that would prevent or impair Leisure from constructing the hotel the parties contemplated would be built and operated by Leisure on the property. [Doc. No. 2-1, Petition, ¶16]. Defendants removed the case to federal court based on diversity jurisdiction and subsequently filed a Motion for Summary Judgment, arguing plaintiff's negligence claim was barred, as a matter of law, by the parol evidence rule. [Doc. No. 20]. The court granted defendants' Motion for Summary Judgment, but gave plaintiff leave to file an Amended Complaint. [Doc. No. 56].

## II. Allegations of First Amended Complaint

The First Amended Complaint alleges, in pertinent part, that LHI is in the business of building and operating hotel properties in Oklahoma. [Doc. No. 58, ¶1]; that Hunt Properties, Inc. ("Hunt") is in the business of owning, operating, managing, marketing and developing commercial real estate in the southwest region of the United States, including Oklahoma, and was the manager of SFM GP, L.L.C ("SFM") [*Id.*, ¶2]; that SFM was the general partner of SF Crossing Investors, Ltd. Now SF Crossing Investors, L.P. ("Crossing"); and that Crossing was in the business of owning, operating, managing, marketing and developing commercial real estate in the southwest region of the United States, including Oklahoma. [*Id.*, ¶4]. LHI alleges that Jim Shindler is an agent of all defendants. [*Id.*, ¶8], and that Shindler contacted the president of LHI, Robert Patel, in September 2005 about purchasing a portion of the Smith Farm Shopping Cener property located in Owasso (the "Property"). [*Id.*]. LHI alleges at all material times Shindler was a Vice President with Hunt, Hunt was represented to be the manager for SFM and SFM was represented to be the general partner for Crossing. [*Id.*]. LHI asserts that in October 2005, Patel provided Hunt, and specifically Shindler at Shindler's request, with site plans and architectural drawings depicting the proposed hotel, and advised Shindler that LHI's purchase of the Property was not only dependent on LHI's ability to develop the Property to include the Proposed Hotel, but also that LHI intended to develop or sell a portion of the Property for use as a restaurant. [*Id.*, ¶9].

The First Amended Complaint alleges that in November 2005, Schindler advised Patel he did not foresee any problem with development of the Property in the manner LHI intended but before the parties could enter into a purchase and sale agreement, defendants would need to get

the consent of Target Corporation, the anchor tenant of the Smith Farm Shopping Center, and other owners with an interest in the shopping center, and that he did not foresee any difficulties obtaining the approval of Target and the other owners with respect to LHI's development of the proposed hotel on the property. [*Id.,* ¶10]. Plaintiff alleges that in early December 2005, Shindler advised Patel that defendants had received the approvals and consents necessary to permit LHI's development of the proposed hotel, that LHI and defendants could move forward with entering into a purchase and sale agreement and that defendants would begin drafting the agreement. Plaintiff alleges that at no time did Shindler advise Patel or LHI that the defendants did not have or could not obtain approval of the other owners with respect to LHI's development of the proposed hotel. [*Id.,* ¶12].

Plaintiff alleges that, acting in reliance on the promises and representations of Shindler and the defendants that the consents and approvals necessary to permit LHI to develop the proposed hotel on the property had been or would shortly thereafter be obtained, on January 25, 2006, LHI entered into a purchase and sale agreement with defendants to purchase the property. [*Id.,* ¶13]. It asserts that although the Agreement specifically contemplates and defendants understood the property would be used to construct a four-story Hampton Inn Hotel, at the time the Agreement was executed, the property remained subject to certain covenants, easements and restrictions contained in a Declaration of Easements, Covenants and Restrictions ("EC&Rs") that had been filed of record on October 27, 2004, and which specifically prohibited the Property from being sued for hotel purposes. [*Id.,* ¶14]. Plaintiff contends that during the course of negotiating the Agreement, LHI made clear to Shindler and defendants and defendants understood that LHI's purchase of the Property was predicated on the Property being susceptible

3

to development of the proposed hotel. [*Id.,* ¶15].   It alleges that, in entering into the Agreement, it acted in reliance on and induced by  representations and promises made by Shindler and Defendants that the consents and approvals of Target and others with an interest in the Smith Farm Shopping Center had been or would be obtained before closing. [*Id.*].  Plaintiff alleges that both before and after entering into the Agreement, Shindler and defendants undertook to carry out promises and representations that had been make to LHI that they would obtain the necessary consents and approvals. [*Id.,* ¶16].  Without consulting, conferring with or notifying LHI, defendants undertook to amend the EC&Rs so as to permit the Proposed Hotel to be developed on the Property.  An amendment prepared by Shindler and/or Hunt and/or SFM and/or Crossing was executed by all requisite property owners as of May 17, 2006 (the "Second Amendment") and was filed of record in the land records of Tulsa County, Oklahoma, on June 8, 2006. [*Id.,* ¶17].

The First Amended Complaint alleges that before the closing of the sale of the Property on June 8, 2006, it believed that pursuant to the promises and representations of and the duty assumed by the defendants, there were no restrictions against LHI's development of the property as a four story Hampton Inn Hotel and that defendants had complied with the promises and representations made and the duty assumed toward LHI by alleviating any restrictions or prohibitions with respect to such development that may have existed at the time LHI notified defendants of its intention to develop the Property to include the proposed hotel. [*Id.,* ¶18]. Further, plaintiff alleges defendants did not advise LHI that they had not complied with the promises and representations, that they had no such obligation to do so, or that they did not have any intention of doing so. [*Id.*].

Plaintiff alleges "Shindler and Defendants intended to and did intentionally deceive LHI by representing to LHI that they would and could obtain the necessary approvals from affected property owners to permit construction of the Proposed Hotel when they had no intention of so doing. Instead, Defendants never intended to fulfill their promises to LHI, but instead intended only to lull LHI into believing Defendants would obtain the necessary consents and approvals to permit construction of the Proposed Hotel so as to induce LHI to enter into the Agreement so that once the Agreement was executed Defendants could renege on those promises and representations and ignore the duty they assumed in reliance on language in the Agreement they believed would shield them from liability on the basis that, as they have now admitted, LHI was itself required to obtain the necessary consents and approvals from affected property owners so as to permit development of the Proposed Hotel on the Property, that LHI had no right to rely on Defendants to do so, and, in fact, Defendants had no obligation to fulfill such promises and representations." [*Id.,* ¶20]. Plaintiff further alleges: "After LHI entered into the Agreement and up to and through closing of the property sale transaction, Defendants went so far as to conduct a series of activities designed to give the appearance they were fulfilling the promises and representations they made to LHI and the duty they assumed toward LHI to obtain the necessary consents and approvals of affected property owners to allow development of the Proposed Hotel on the Property, including communicating with affected property owners, drafting the Second Amendment, securing signatures on the Second Amendment, and filing the Second Amendment of record one minute before filing the deed conveying the subject parcels to LHI." [*Id.,* ¶21].

Plaintiff alleges Shindler and Defendants made promises and representations to LHI with the intent that LHI would rely on them and enter into the Agreement, trusting that defendants

5

would fulfill their promises and representations and the duty they assumed toward LHI. [*Id.,* ¶22]. Plaintiff alleges "Defendants achieved the purpose of their fraudulent activities by inducing LHI to enter into the Agreement in reliance on the truthfulness of the promises and representations made and the duties assumed by Defendants that they would obtain the consents and approvals necessary to permit LHI to develop the Property to include the Proposed Hotel, all to the detriment of LHI." [*Id.*].

Plaintiff seeks actual and punitive damages. [*Id.,* ¶¶23-24].

### III. Analysis

Defendants contend the First Amended Complaint fails to meet the pleadings requirements of either Fed.R.Civ.P. 9(b) or Rule 8(a)(2), and should therefore be dismissed pursuant Rule 12(b)(6).

#### A. Rule 9(b) Pleading Requirements

Fed.R.Civ.P. 9(b) provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Rule 9(b)'s purpose "is to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based." *Koch v. Koch Indus., Inc.,* 203 F.3d 1202, 1236 (10th Cir. 2000) (internal quotations and citations omitted). The Tenth Circuit "requires a complaint alleging fraud to set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id.* (internal quotations and citations omitted). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud, and [she] must set forth the time, place, and contents of the

false representation, the identity of the party making the false statements and the consequences thereof." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah,* 472 F.3d 702, 726-27 (10th Cir. 2005). Rule 9(b)'s particularity requirement, however, is not absolute or limitless; a plaintiff need not go so far as to give the defendant a 'pretrial memorandum containing all the evidentiary support for plaintiff's case." *Schrag v. Dinges,* 788 F.Supp. 1543, 1550 (D. Kan. 1992) (citation omitted).

In reviewing a motion to dismiss pursuant to Rule 9(b), the court must confine its analysis to the text of the complaint, accepting as true all well-pleaded facts as distinguished from conclusory allegations. *Id.* at 726. Those facts must be viewed in the light most favorable to the non-moving party. *Id.*

The First Amended Complaint states who, on behalf of defendants, made the alleged misrepresentations (Shindler); who received specific alleged misrepresentations (Patel and LHI); when the alleged misrepresentations were made (in September, October, November and December of 2005, January 26, 2006, and in the period of time between execution of the agreement on January 26, 2006, and the closing on June 8, 2006); where the alleged misrepresentations were made and/or what type of communication medium contained the alleged misrepresentations (in Tulsa County during communications between Patel and Shindler). The First Amended Complaint also alleges the specific misrepresentations (that defendants could and would obtains consents and approvals from other property owners of Smith Farm Crossing for LHI to build the proposed hotel) and the consequences of those misrepresentations (that LHI entered into the agreement in reliance on the statements and suffered losses when defendants could not or did not obtain all consents and approvals needed). Thus, the First Amended

7

Complaint gives defendants "fair notice" of plaintiff's claim.

### B. *Twombly* Standard

Defendants also contend the First Amended Complaint fails to meet the pleading requirements of Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court clarified this standard in *Bell Atlantic Corp. v. Twombly*, ruling that to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotations omitted). On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

Under the *Twombly* standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008), quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247, citing *Twombly*, 127 S.Ct. at 1965 (internal quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*.

Although the new *Twombly* standard is "less than pellucid," the Tenth Circuit Court of Appeals has interpreted it as a middle ground between "heightened fact pleading," which is expressly rejected, and complaints that are no more than "labels and conclusions," which courts should not allow. *Robbins*, 519 F.3d at 1247, citing *Twombly*, 127 S.Ct. at 1964, 1965, 1974. Accepting the allegations as true, they must establish that the plaintiff plausibly, and not just speculatively, has a claim for relief. *Robbins*, 519 F.3d at 1247. "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id*. at 1248. The Tenth Circuit Court of Appeals instructed in *Robbins* that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context. . . .[and] the type of case." *Id*. (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 231-32 (3d Cir. 2008)). A simple negligence action may require significantly less allegations to state a claim under Rule 8 than a case alleging anti-trust violations (as in *Twombly*) or constitutional violations (as in *Robbins*). *Id*.

The court, having found that the First Amended Complaint meets the heightened pleading standards of Rule 9(b), also concludes that it also meets the requirements of Rule 8(a)(2) as explained in *Twombly*. The First Amended Complaint sets forth sufficient allegations to give defendants fair notice of its claim of fraud. Although it remains to be seen, through discovery and motion practice, whether LHI can actually *prove* its claims, the allegations are plausible on their face.

9

### III. Conclusion

For the reasons set forth above, defendants' Motion to Dismiss [Doc. No. 77] is denied.

ENTERED this 22nd day of November, 2010.

*Gregory K. Frizzell*
Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma